IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

SARA WHITE,

    **Plaintiff,**

v.                                             Civil Action No.: 5:08-CV-180
                                                     JUDGE STAMP

MICHAEL J. ASTRUE,
**Commissioner of Social Security,**

    **Defendant.**

**REPORT AND RECOMMENDATION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [20], AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [16]**

On December 8, 2008, Plaintiff, Sara White ("Plaintiff"), by counsel Susan Kipp McLaughlin, Esq. and Regina L. Carpenter, Esq. filed a complaint in this Court to obtain judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner") pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). On February 12, 2009, the Commissioner, by counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed an answer and administrative transcript of the proceedings. On April 29, 2009 and June 25, 2009, Plaintiff and the Commissioner filed their respective Motions for Summary Judgment [16] [20]. Following review of the motions by the parties and the transcript of administrative proceedings, the undersigned Magistrate Judge now issues this Report and Recommendation to the District Judge.

# I. PROCEDURAL HISTORY

Plaintiff filed an application for SSI[1] on January 19, 2006, alleging that she became disabled on June 5, 2005, (the last day that she worked) due to "degenerative disc disease" and "depression" (R. 65-77). The state agency denied the application initially and on reconsideration ( R. 51-59). At Plaintiff's request, an administrative law judge (ALJ) held a hearing on February 22, 2008, when Plaintiff, who was represented by an attorney, testified, along with a vocation expert . ( R. 403-435). At the hearing, Plaintiff amended her onset date to July 5, 2005, the date that she filed an earlier unsuccessful application ( R. 406). The ALJ declined to reopen the earlier application ( R. 16, note 1).

The ALJ issued a decision on March 15, 2008, finding at step two of the sequential evaluation process, that Plaintiff's degenerative disc disease of the cervical spine, her depression and generalized anxiety order, and COPD were "severe" in that each would cause more than a minimal limitation on her ability to work ( R. 15-29). Relying upon vocational expert testimony, the ALJ found that other light work existed in the national economy that Plaintiff could perform that accommodated her need for performing only simple, routine tasks, and minimal exposure to stress and contact with others, such as the jobs of simple assembler and office assistant ( R. 29, 430-31)

The Appeals Council considered Plaintiff's request for review of the ALJ's decision ( R.11-12), but found no basis upon which to overturn that decision (R. 6-8). Plaintiff now appeals the ALJ's decision, which is the final determination of the Commissioner in this case.

---

[1] Plainitiff's husband, who is an SSI recipient, filed the application on behalf of this wife. ( R. 65-77).

## II. STATEMENT OF FACTS

### A. Vocational Evidence

Sara S. White, ("Claimant" or "Plaintiff") was born on April 11, 1958. Plaintiff last worked on June 5, 2005 as a sales clerk at a Good Will Store. ( R. 410-411). She was 48years old at the time she filed her application ( R. 410). . Plaintiff has a high school equivalency degree (GED) and has worked at the following jobs: sales associate at Good Will Store; self-employed paper carrier; salesperson of auto parts, and laundry aide in a nursing home ®. 85, 410-11). [2] The vocational expert testified that the newspaper delivery job was medium in exertion level and semi-skilled; the Goodwill Store job was light in exertion and semi-skilled; and the auto-parts sales job was medium in exertion and semi-skilled ( R. 426-28).

The Plaintiff testified that the reason she has not been working is because of trouble with her shoulder and neck pain. ( R. 412). The Plaintiff further asserts that she has pain in her lower and upper back areas and that she suffers from obesity, depression and anxiety. ( R. 18, 424)

The ALJ asked the expert whether work existed in the national economy for an individual with Plaintiff's age, education, background, work experience, who was limited to the lifting and walking requirements of light work, limited contact with others, such as colleagues and the public, and who was limited to low-stress routine work not involving any decision making beyond that required of simple, routine tasks, and not involving more than slow-paced or low production quotas ( R. 429). The vocational expert identified the jobs of house cleaner or housekeeper (78,000 jobs

---

[2] The ALJ questioned Plaintiff about a doctor's notation in January 2006 that Plaintiff had begun a new job at a dry-cleaning business, but Plaintiff denied working after June 2005 ( R. 198, 421).

nationally), and bottle packer (147,000 jobs nationally) ( R. 429).  When the ALJ amended the hypothetical question to include a preclusion on exposure to breathing irritants, such as dust and fumes, the vocational expert identified other light work such as simple bench assembler (155,000 jobs nationally), and office helper (643 jobs nationally) ( R. 430).  The expert further stated that the jobs of assembler and office helper could be performed with a sit/stand option ( R. 430).  The vocational expert also testified that Plaintiff had transferrable skills to sedentary work, and could do general office clerk work at the sedentary level, which primarily involved document preparation and if Plaintiff were further limited to only occasional use of her right hand, there were surveillance system monitor positions that did not require any use of the hands (45,000 jobs nationally) ( R. 432).

### B.  Medical Evidence

**1.  Physical Complaints**

While Plaintiff was still working at Goodwill, Plaintiff sought treatment on June 2, 2005, at Fairmont General Hospital emergency room for neck pain ( R. 162-68).  She was not admitted, but was prescribed Flexeril and Lortab, and released (R.168).  Two weeks later, she had an x-ray of her cervical spine as requested by Dr. Chong; the report indicated normal precervical soft tissues, moderate narrowing and marginal osteophytosis at C6-7, and mild narrowing and lesser osteophytes at C5-6 ( R. 161).  The radiologist's impression was localized degenerative arthritic changes of the lower two cervical inner spaces, but otherwise "negative" cervical spine ( R. 161).

Several months later, on October 4, 2005, Plaintiff sought treatment at the United Hospital Center emergency room complaining of pain in her neck and shoulder blades, arms and fingers ( R. 181-88).  She reported that she slipped and fell in wet grass which aggravated an old injury ( R. 181).  The attending physician prescribed Lortab and acetaminophen, and discharged her without

admission ( R. 187-188).

Plaintiff first sought treatment at the Family Practice group of the United Hospital Center on January 4, 2006, for evaluation of her complaints of pain ( R. 198). Dr. Gabriel ordered an MRI of the cervical spine on January 13, 2006, which showed a large disc protrusion at C5-6 level on the right consistent with a large disc herniation ( R. 202). There was a second disc protrusion at C6-7, and a small central disc protrusion at C3-4. The radiologist's impression was that the disc herniation at the C5-6 and 6-7 levels were compressing the thecal sac ( R. 202). An MRI of the lumbar spine showed a small disc protrusion at L5-S1 level that showed no significant impingement upon the neural elements ( R. 203).

Dr. Gabriel referred Plaintiff for a neurological evaluation at the West Virginia University Department of Neurosurgery ( R. 216). The February 28, 2006, report of Charles Rosen, M.D., Assistant Professor of Neurosurgery, indicated that Plaintiff's gait was steady, her strength was five out of possible five and she had no sensory deficits ( R. 216). Dr. Rosen observed that Plaintiff had full range of motion of her neck, and that it was not tender ( R. 216). Dr. Rosen noted that the MRI showed a right C6-7 herniated disc, but recommended conservative treatment with physical therapy and non-steroidal anti-inflammatory drugs, and that she stay active ( R. 216).

Plaintiff attended physical therapy for three sessions at the Johnson Center of the United Hospital Center, but withdrew "secondary to losing her medical card" on July 3, 2006 ( R. 297. 300-302). Plaintiff told the physical therapist that she was independent with all activities of daily living and household activity ( R. 303). She also attended physical therapy at the Health Works Rehab and Fitness in October 2006 and January 2007 ( R. 312-27).

According to John Manchin, II, D.O, he first treated Plaintiff at the Manchin Clinic family

practice in August 2007. ( R. 366). His treatment notes indicate that she was seen for complaints of asthma and allergies ( R.269-70); a yeast infection in her groin ( R. 271); hot flashes ( R.272); density in her left breast, and mitral insufficiency ( R. 272); joint pain and stiffness ( R. 274); hypertension ( R. 361); complaints of hearing loss in her right ear ( R. 363); and overactive bladder symptoms ( R. 364). An eco-cardiogram showed no pericardial effusion ( R. 279). An ultra sound of her left breast indicated "probably benign findings" ( R. 278).

Dr. Manchin wrote a letter on February 20, 2008, opining that Plaintiff would not be able to perform gainful employment because of her diagnosis of cervical disc disease, arthritis, degenerative joint disease and right upper extremity radiculopathy accompanied by decreased range of motion of her cervical spine on side bending, rotation, flexion, and extension, and decreased grip strength in the right hand. ( R. 366).

The ALJ evaluated the medical source opinions according to the regulation at 20 C.F.R §416.927, and determined that Dr. Manchin's opinion that Plaintiff's neck and low back prevent her from working is unsupported by his notation of only reduced lumbar range of motion and diminished grip in one hand, and this findings do not appear in any of his examination notes ( R. 25, 366).

Plaintiff underwent nerve conduction studies and an EMG on August 29, 2007, that were normal ( R. 268). The report stated, "There is no electro-physiologic evidence of neuropathy, radiculopathy, carpal tunnel syndrome, or ulnar nerve lesion, on the right side" ( R. 268).

## 2. Psychological Complaints

Plaintiff first sought psychiatric evaluation of depression on January 27, 2006, at the Valley Healthcare System after reading a pamphlet about depression at the West Virginia Department of Rehabilitation ( R. 213-15). The diagnosis by Dr. Hossain, staff physician was "Major Depressive

Disorder, moderate, without psychotic feature" and "Generalized Anxiety Disorder" ( R. 215). Dr. Hossain noted that Plaintiff stated that she had a lot of stress in her life including financial stress, and difficulty with her daughter ( R. 213). She denied panic attacks ( R. 213). Dr. Hossain assigned a Global Assessment of Functioning (GAF) Score of 65 ( R. 215)[3]. He prescribed Prozac, and Elavil and suggested that she return for follow-up of pharmacological management in four weeks, and that she attend therapy sessions ( R. 215).

When Plaintiff returned on March 10, 2006, Dr. Hossain noted that Plaintiff's sleep improved with Elavil ( R. 211). He observed that her speech was normal, her thought process was linear and goal-directed, and her thought content demonstrated no delusions or illusions. ( R. 212). She had no perceptual disturbance and her insight and judgement was fair ( R. 212). She denied panic attacks ( R. 213). Dr. Hossain noted that Plaintiff had multiple pyscho-social stressors including financial stress ( R. 211-12). He increased the Prozac to 40 mg once a day, and continued the Elavil. He recommended that she continue therapy sessions, and assessed a GAF of 60 to 65 ( R. 211-12).

During a monthly follow up on April 7, 2006, Dr. Hossain reported that Plaintiff was stressed because her granddaughter was taken by a social welfare agency ( R. 209). Dr. Hossain found that Plaintiff's psychiatric exam was stable, that she denied panic attacks, and recommended that she continue with current medications, and assessed a GAF of 61-70 ( R. 209-10). By May 5, 2006, Dr. Hossain noted that Plaintiff was doing much better ( R. 384). In July 2006, Dr. Hossain noted that Plaintiff's daughter got her child back and moved back in with Plaintiff. ( R. 388). Plaintiff's son,

---

[3] "A Global Assessment Functioning Score of 65 indicates some mild symptoms, such as depressed mood or insomnia, but 'generally functioning pretty well'." See Ft 1 of Def. Brief, Doc 21 p 6; *citing* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1996).

who was newly married also moved back in with Plaintiff with his wife and new-born child ( R. 388). During the visit, Dr. Hossain rated Plaintiff's GAF as between 65 and 70 ( R. 388). Plaintiff did not keep her regularly scheduled monthly appointments with Dr. Hossain in September 2006 ( R. 390).

At the request of the state agency responsible for initial disability determinations, psychologist Peggy Allman, M.A., evaluated Plaintiff on September 19, 2006 ( R. 169-79). Psychologist Allman noted that Plaintiff complained of panic attacks ( R. 170). She recorded that Plaintiff smoked a pack and a half of cigarettes and consumed 24 to 36 cups of caffeinated drink daily ( R. 170). Plaintiff told the psychologist that, while in school, she was in regular classes, and did not report difficulty with reading or writing ( R. 170). She reported getting along well with coworkers and supervisors while she was working ( R. 171). She admitted to being arrested on one occasion for theft, but that the accuser did not show up for the hearing ( R. 171).

Psychologist Allman performed psychological testing, and noted that Plaintiff's concentration, measured by serial sevens, was mildly deficient; her persistence and pace were within normal limits, her immediate memory was mildly deficient; and her recent memory was within normal limits ( R. 172). On mental status examination, the psychologist noted that there was no evidence of disturbance of thought process, content, or perception ( R. 171). She noted that Plaintiff complained of panic attacks, discomfort around crowds, and anxiety ( R. 171-72).

Plaintiff returned to Dr. Hossain on August 29, 2007, when he rated her GAF as 70 ( R. 394-95). Dr. Hossain noted on October 20, 2007, that Plaintiff denied any significant symptoms of depression or anxiety; he diagnosed only mild major depression with a GAF of 60 ( R. 396-97). On December 20, 2008, Dr. Hossain noted that Plaintiff stated she is doing "wonderful" ( R. 399).

### III. Administrative Law Judge's Decision

Utilizing the five-step sequential evaluation process prescribed in the Commissioner's regulations at 20 C. F.R. §§ 404.1520 and 416.920, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful employment since the alleged onset date.
2. The claimant has degenerative disease of the cervical spine, chronic obstructive pulmonary disease, obesity, major depression and an anxiety disorder but does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Sub-part P, Regulations No. 4, Sections 1.04, 3.02, 12.04 and 12.06.
3. The claimant's statements concerning her alleged impairments and their effect on her ability to work are less than fully credible as set forth in the opinion.
4. Due to her impairments, the claimant has been limited since the alleged onset date to a residual functional capacity for light work involving only simple, routine tasks, low contacts with others and low stress.
5. The claimant has prior relevant work.
6. The claimant was 47 years old at the alleged onset date and is now 49 years old.
7. The claimant has the equivalent of a 12th grade education, reads and writes English and lacks transferable skills within the residual functional capacity.
8. Based on the residual functional capacity set forth in Paragraph 4, and the claimant's age, educational background and work experience, the vocational testimony establishes that she retains the residual functional capacity to engage in occupations with significant numbers of jobs in the regional and national economies.
9. The claimant has not been under a "disability," as defined in the Social Security Act, since the alleged onset date (20 CFR 416.920(f)).

( R. 28-29).

### IV. CONTENTION OF PARTIES

**A.** **Plaintiff contends.**

The Plaintiff contends that the ALJ's credibility analysis does not comply with the specific and detailed two-step procedure laid out in SSR 96-7p. (See Pl.'s br., Doc. 17)

**B.     Commissioner contends**

The Commissioner contends that the ALJ did properly assess Plaintiff's credibility according to the regulation governing the evaluation of subjective complaints at 20CFR § 404.909 and that the Commissioner has met his burden of producing vocational evidence of other work that Plaintiff could perform in the national economy that accommodate her limitations.

## V.  DISCUSSION

### A.     Standard for Judicial Review of a Decision by the ALJ

Judicial review of a final decision regarding disability benefits is limited to determining whether the findings...are supported by substantial evidence and whether the correct law was applied. *See* 42 U.S.C. § 405(g). "The findings...as to any fact, if supported by substantial evidence, shall be conclusive" *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The phrase "supported by substantial evidence" means "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *See Perales*, 402 U.S. at 401, 91 S. Ct. at 1427 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216 (1938))...Substantial evidence...consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance...Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment...if the decision is supported by substantial evidence. *See Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *Snyder v. Ribicoff*, 307 F.2d 518, 529 (4th Cir.1962). Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence. *King v. Califano*, 599 F.2d 597, 599 (4th Cir.1979). **"This Court does not find facts or try the case *de novo* when reviewing disability determinations."** *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir.1976); "We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of non-persuasion." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir.1972). "The language of the Social Security Act precludes a *de novo* judicial proceeding and requires that the court uphold the decision even should the court disagree with such decision as long as

it is supported by 'substantial evidence.'"

*See Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990) (emphasis added). With these standards in mind, the Court reviews the decision by the ALJ.

### B. Standard for Disability and Five-Step Evaluation Process

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work..."[W]ork which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

*See* 42 U.S.C. § 423(d)(2)(A). In order for the ALJ to determine whether a plaintiff is disabled and therefore entitled to disability insurance benefits, the Social Security Administration has established a five-step sequential evaluation process. The five steps are as follows (including Residual Functional Capacity Assessment prior to Step Four):

Step One: Determine whether the plaintiff is engaging in substantial gainful activity;

Step Two: Determine whether the plaintiff has a severe impairment;

Step Three: Determine whether the plaintiff has "listed" impairment;

*Residual Functional Capacity Assessment*
(Needs to be Determined Before Proceeding to Step Four)

Step Four: Compare residual functional capacity assessment to determine whether the plaintiff can perform past relevant work;

Step Five: Consider residual functional capacity assessment, age, education, and

work experience to determine if the plaintiff can perform any other

work.

*See* 20 C.F.R. § 404.1520 (evaluation of disability in general). In following the five-step process and coming to a decision, the ALJ makes findings of fact and conclusions of law. In this particular case the only issue raised by the Plaintiff is whether the ALJ properly assessed Plaintiff's credibility according to the regulations governing the evaluation of subjective complaints at 20CFR § 404.909. (See Pl." br., Doc. 17). This Court has reviewed the decision of the ALJ and the evidence contained in the record of this case.

### C. **Steps of ALJ Assessment that are NOT in dispute**

The parties do not dispute the ALJ's findings through Step Two and part of Step Three of the Analysis. At the end of Step Two the ALJ had found five severe impairments: degenerative disease of the cervical spine, COPD, obesity, major depression and an anxiety disorder. Step Three of the evaluation process requires first that the ALJ determine whether the Plaintiff has a "listed" impairment. The ALJ found at Step Three that the Defendant did not meet the listed criteria contained in Listing Sections 1.04, 3.02, 12.04 and 12.06, 20CFR Part 404, Appendix 1 to Subpart P (Listing of Impairments). There is no dispute regarding these findings. ( R. 409-10)

If the ALJ finds that there is no "listed" impairment, the second part of Step Three requires the ALJ to determine the plaintiff's residual functional capacity. This is based on the medical evidence of record, the claimant's testimony, and her credibility. Residual Functional Capacity is a determination of the claimant's remaining capacity to perform work-related activities despite any impairment. (20 CFR 416.945)

Plaintiff asserts that the ALJ erred in his credibility analysis, in which he found Plaintiff's

testimony to be "less than fully credible"; because, the ALJ did not comply with the specific and detailed two-step procedure laid out in SSR 96-7p. ( see Pl's brief doc. 17 and R. 24). The Court will determine whether the ALJ applied the correct law in evaluating credibility and whether his decision was supported by substantial evidence, in accordance with 42 U.S.C. § 405(g) and *Hays*.

### D.     Review of ALJ's Assessment of Credibility

The law governing the ALJ's credibility analysis is as follows:

> The regulations describe a two-step process for evaluating symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness:
>
> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms...
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, ***the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record***. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. This requirement for a finding on the credibility of the individual's statements about symptoms and their effects is reflected in 20 C.F.R. § 404.1529(c)(4) and § 416.929(c)(4)...
>
> When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available

> information that could shed light on the credibility of the individual's statements. In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. § 404.1529© and § 416.929© describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements: 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*See* SSR 96-7p (emphasis added).

The Court finds that the ALJ correctly applied the two-step process and considered the factors enumerated in SSR 96-7p, 20 C.F.R. §§ 404.1529 and 416.929 in evaluating Plaintiff's credibility as is discussed in steps 1 and 2 below.

### (Step 1) Is there a medically-determinable impairment that could reasonably be expected to cause the symptoms alleged?

The Plaintiff claims that the ALJ did not make a finding as to this step. ( Pls Brief, doc. 17, p 4). However, it is clear that the ALJ found "...five severe impairments, degenerative disease of the cervical spine, COPD, obesity, major depression and an anxiety disorder...." He makes further more detailed findings regarding these impairments when he finds that none of them qualify as a "listed" impairment. (See R. 18-23). Obviously any of these severe impairments could be expected to cause the symptoms alleged.

In fact, the ALJ restricted Plaintiff from performing her past relevant medium work, and found that, because of a medical condition that could cause pain, she was restricted to the less stringent requirement of light work. However, the ALJ found that the degree of pain alleged was not consistent with the functional limitations evidence in the record, and also with the absence of cervical neuropathy on the EMG..

"In determining whether you are disabled [an ALJ} consider[s] all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929.

**(Step 2) To what extent do these symptoms limit her ability to do basic work activities through evaluation of the intensity, persistence, and limiting effects of the individual symptoms.**

Contrary to Plaintiff's contentions, the ALJ also considered Plaintiff's activities. The following are important points that the ALJ highlighted in his order casting doubt on the Plaintiff's credibility:

> 1) Although the claimant complains of constant, severe pain in her neck and shoulders, examination results since the alleged onset date generally have been normal with no abnormal findings since November, 2006
> 2) Although the claimant testified to daily pain in her low back, the record does not establish a severe lumbar impairment.
> 3) Although the claimant testified that she becomes short of breath on any exertion, the record since the alleged onset date contains only one such complaint, in May, 2007 (exhibit 20F). Otherwise, the claimant has reported that she becomes short of breath only on heavy exertion (Exhibit 14F).
> 4) Although the claimant testified that she drops objects held in her right hand, the record since the alleged onset date indicates a finding of tremor in the right arm only in January of 2006 (Exhibit 6F) and contains no complaints of dropping objects. One specialist has ascribed the claimant's reported tremor to anxiety (Exhibit 24 F).

> 5) Although the claimant testified that she has pain in her hips, the record since the alleged onset date contains no complaints of hip pain.
> 6) Although the claimant testified that she takes a daily nap of two to three hours, the record since the alleged onset date contains no reports of naps.

( R. 24).

In addition to these points made by the ALJ in his Order, it appears that the Plaintiff's testimony was inconsistent as to her daily activities at the hearing on February 22, 2008. For example, the Plaintiff claims that her daughter does all the household chores for her. ( R. 413-15). Yet her daughter moved out in October of 2007 and only came on the weekends thereafter. ( R. 415).

Further, the Plaintiff admits that when she filed her application for disability in January of 2006 that she did the following daily activities: She cooked, did laundry, washed dishes, went shopping and paid bills. ( R 415). The Plaintiff testified that at the time of the hearing (February 22, 2008) she no longer did these daily activities. ( R. 413). Her daughter did all these chores for her. ( R. 413). The ALJ thereafter asked when after January of 2006 "...did things get much worse for you?" ( R. 415). The Plaintiff answered "Gradually". Later, the ALJ asked the Plaintiff to think back to early 2007 and to tell him if she can do anymore things then, than she can do now. ( R. 417). The Plaintiff replied "No". ( R. 417). Next the ALJ asks, "Okay think back two years ago, that's when you filed your application, were you able then to do more...?" ( R. 417). She answered, "No, I was in a lot of pain back then." ( R. 417). Consistent with the regulation, the ALJ weighed Plaintiff's testimony and found it not consistent with the record.

The ALJ's preceding consideration of the degree to which Plaintiff's subjective complaints are consistent with the "objective evidence and other evidence" is entirely consistent with the record, and is authorized by the regulation.

Therefore, the Court finds that the ALJ correctly applied the two-step process and considered the factors enumerated in SSR 96-7p, 20 C.F.R. §§ 404.1529 and 416.929 in evaluating Plaintiff's credibility and that his decision is supported by substantial evidence.

### E. Vocational Evidence of Other Work

The ALJ asked the vocational expert to consider a hypothetical individual of the same age (47), education (12th grade), and past work experience (medium and semi-skilled) as Plaintiff ( R. 429). Taking into consideration Plaintiff's limitations from her cervical disc disease, the ALJ asked the vocational expert to consider that the hypothetical individual was limited to the lifting required of light work. The ALJ imposed further restrictions, because of Plaintiff's COPD, against working around dust or fumes. Because of Plaintiff's depression and anxiety, the ALJ further restricted the hypothetical individual to unskilled, routine, low stress jobs that did not require much contact with others. The vocational expert testified that such an individual could perform the jobs of simple assembler and office helper with the limitations described by the ALJ ( R. 430). The expert testified that these jobs exist in significant numbers in the national economy. ( R. 430). Therefore the Commissioner has met his burden of producing valid vocational evidence of work that exists in the national economy that Plaintiff could perform.

In conclusion, the ALJ found that based on the Plaintiff's applications filed on January 19, 2006, the Plaintiff has not been disabled since the alleged onset date for the purpose of receiving supplemental security income benefits under sections 1602 and 1614 (a)(3)(A) of the Social Security Act. ( R. 29). The Court finds that the ALJ's decision is supported by substantial evidence.

## VI. RECOMMENDATION AND CONCLUSION

For all the above reasons, the undersigned United States Magistrate Judge finds that the ALJ correctly applied the law and that substantial evidence supports the ALJ's decision that Plaintiff is not disabled and can perform other work in the national economy. The undersigned Magistrate Judge hereby **RECOMMENDS** that the District Court **GRANT** Defendant's Motion for Summary Judgment **[20]**, **DENY** Plaintiff's Motion for Summary Judgment **[16]**, and **AFFIRM** the Decision of the Administrative Law Judge.

The Court notes the Plaintiff's objections to the ruling.

Within ten (10) days of receipt of service of this Report and Recommendation, any counsel of record may file with the Clerk of the Court any written objections to this Recommendation. The party should clearly identify the portions of the Recommendation to which the party is filing an objection and the basis for such objection. The party shall also submit a copy of any objections to the Honorable Frederick P. Stamp, Jr. Failure to timely file objections to this Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon this Recommendation. 28 U.S.C. § 636(b)(1).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: October 6, 2009**

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE